UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

JOHN R. BLOYER, JR., ADRIANNE L.          )
BLOYER, KEVIN DVORAK AND                  )
KATHLEEN DVORAK,                          )
                                          )
      Plaintiffs                          )
                                          )
and                                       )
                                          )    **JURY TRIAL DEMANDED**
THE  PEOPLE OF THE STATE OF               )
ILLINOIS, the "ST. CLAIR                  )    Case No.  3:14-cv-01119-JPG-PMF
COUNTY GOVERNMENT", EX REL.               )
 FOR THE USE AND BENEFIT OF THE           )
ABOVE NAMED PLAINTIFFS AND                )
ALL PERSONS SIMILARLY SITUATED            )
                                          )
      Relators & Use-Plaintiffs            )
                                          )
v.                                        )
                                          )
ST. CLAIR COUNTY ILLINOIS,                )
CHARLES SUAREZ, CHARLES SUAREZ            )
 in his official capacity as ST. CLAIR    )
County Treasurer,                         )
BARRETT ROCHMAN,                          )
KENNETH ROCHMAN,                          )
SABRE GROUP LLC,                          )
S.I. SECURITIES, LLC,                     )
DENNIS BALLINGER, SR.                     )
DENNIS D. BALLINGER, JR.,                 )
EMPIRE TAX CORP.,                         )
VISTA SECURITIES, INC.,                   )
JOHN VASSEN,                              )
JOSEPH VASSEN,                            )
VI, INC.,                                 )
SCOTT MCLEAN,                             )
LAND OF LINCOLN SECURITIES, LLC,          )
WHITE OAK SECURITIES, LLC                 )
ALGONQUIN SECURITIES, LLC                 )
SCOTT SIERON,                             )
RAVEN SECURITIES INC.,                    )
JOHN W. SCOTT  AND                        )
EDWARD BEASLEY,                           )

)

Defendants.                                )

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak ("Plaintiffs") by and through the undersigned counsel, on behalf of themselves and on behalf of all persons similarly situated and The People of the State of Illinois and/or the "St. Clair County Government" and for the use and benefit of the named Plaintiffs and on behalf of all persons similarly situated bring this class action suit against Defendants St. Clair County, Charles Suarez both individually and in his official capacity as St. Clair County Treasurer, Barrett Rochman, Kenneth Rochman, Sabre Group LLC, S.I. Securities, LLC, Dennis D. Ballinger, Sr., Dennis D. Ballinger, Jr., Empire Tax Corp., Vista Securities, Inc. John Vassen, Joseph Vassen, VI, Inc., Scott McLean, Land of Lincoln Securities, LLC, White Oak Securities, LLC, Algonquin, LLC, Scott Sieron, Raven Securities, John W. Scott, and Edward Beasley for civil conspiracy, money had and received, antitrust violations and for breach of fiduciary duty. For their Complaint, Plaintiffs state as follows:

## GENERAL ALLEGATIONS

### Introduction

1.     This lawsuit seeks recovery of losses arising from an illegal and improper agreement and conspiracy between Charles Suarez, the Treasurer of St. Clair County, and certain real estate tax sale purchasers to artificially inflate the amounts Illinois property owners, whose properties were subject to tax sale by the St. Clair County Treasurer for unpaid real estate taxes in 2006 and 2007, would have to pay to redeem their properties and keep title thereto and to illegally rig the tax sales. As more specifically alleged below, as a result of the wrongful acts of

those participating in such agreements and conspiracies, the Plaintiffs and each member of the class they represent were tricked, coerced, and/or forced to pay substantially higher amounts to redeem their properties than they would have had to pay absent such conspiracy or were forced to participate in a rigged tax sale.

## The Named Parties

2.      Plaintiffs, and the class members, are persons who owned property located in St. Clair County which was sold at one or more St. Clair County real estate tax auctions during the years in question and who redeemed that property by paying a "penalty rate" in excess of that which would have been required in the absence of the conspiracy and agreements described below.

3.      Plaintiffs, John R. Bloyer, Jr. and Kathleen Bloyer who at all relevant times were the owners of real property commonly known as 410 W 5th Street, O'Fallon, St. Clair County Illinois when it was sold at the 2007 tax sale on November 13, 2008.

4.      The Bloyer property was successfully bid on by Defendant White Oak Securities, LLC at a penalty rate of 18%.

5.      The Bloyer property was redeemed on September 19, 2011. To redeem the property, the Bloyers had to pay $3,594.21 in interest on their $3,327.97 tax bill for 2007.

6.      Plaintiffs Kevin Dvorak and Kathleen Dvorak, who at all relevant times were the owners of the real property known as 518 E. Washington St., O'Fallon, St. Clair County Illinois when it was sold at 2007 tax sale on November 13, 2008.

7.      The Dvorak property was successfully bid on by Defendant White Oak Securities, LLC at a penalty rate of 18%

8.      The Dvorak property was redeemed on November 8, 2011.  To redeem the property, the Dvoraks had to pay $1,725.03 in interest on their $1,597.25 tax bill for 2007.

9.      Plaintiffs Kevin Dvorak and Kathleen Dvorak at all times relevant were the owners of the real property known as 619 W Schuetz St., Lebanon, St. Clair County Illinois when it was sold at the 2007 tax sale on November 13, 2008.

10.     The Dvorak property was successfully bid on by Defendant White Oak Secuirities, LLC at a penalty rate of 18%.

11.     The Dvorak property was redeemed on November 8, 2011.  To redeem the property, the Dvoraks had to pay $2,018.22 in interest on their $1,868.72 tax bill for 2007.

12.     The 2006 and 2007 tax sales in St. Clair County were rigged and illegally conducted as described below at said tax sales as a result of the conspiracy of the Defendants.

13.     Defendant Charles Suarez ("Suarez") served as St. Clair County Treasurer at all times relevant to this complaint, specifically from 2000 to the present time. Suarez is sued individually for acts he took to further his own self interest and also on behalf of St. Clair County as more fully described below.

14.     Defendant Charles Suarez ("Treasurer Suarez") is the current St. Clair County Treasurer, and is also sued in his official capacity.  In the event the holder of the office of St. Clair County Treasurer for any reason should change during the course of this action, Plaintiff will ask the Court to substitute the current office holder for Defendant Suarez.

15.     Defendant St. Clair County is an Illinois municipal corporation.

16.     In Illinois, every county has an elected County Treasurer.

17.     By statute, the County Treasurer is required to post a surety bond in accordance with 55 ILCS 5/3-10003.

18.     By statute, the County Treasurer is ex-officio the County Collector. 35 ILCS 200/19-35.

19.     By statute, the County Treasurer is required to post a **separate** surety bond for his or her duties as County Collector. 35 ILCS 200/19-40.

20.     Counsel for Plaintiffs herein have attempted by a Freedom of Information Act (FOIA) request sent pursuant to 5 ILCS 140 to obtain copies of the public official bonds issued on behalf of Suarez both as Treasurer and as County Collector (from 2004 to present) so that it could name the bonding company that issued said surety bonds as an additional defendant herein, but to date, St. Clair County has failed to produce the documents requested and has thereby denied the FOIA request.

21.     The remaining Defendants set forth below will be collectively referred to as the "Tax Purchaser Defendants."

22.     Defendant Barrett Rochman ("B. Rochman") is an Illinois resident, or alternatively does business within the State of Illinois, and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and through and in conjunction with Defendant K. Rochman, Defendant Sabre Group, and Defendant SI Securities.

23.     Defendant Kenneth Rochman ("K. Rochman") is an Illinois resident, or alternatively does business within the State of Illinois, and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and through and in conjunction with Defendants B. Rochman, Sabre Group, and SI Securities.

24.     Defendant Sabre Group LLC ("Sabre") is an Illinois limited liability company that knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below in conjunction with B. and K. Rochman.  For example, Defendant Sabre Group purchased 180 properties at the 2006 tax sale and 205 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

25.     Defendant SI Securities, LLC ("SI") is an Illinois limited liability company that knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below in conjunction with B. and K. Rochman.  For example, Defendant SI Securities purchased 115 properties at the 2006 tax sale and 141 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

26.     Defendants B. Rochmann, K. Rochman, Sabre Group, and SI are all hereafter collectively referred to as the "Rochman Defendants."

27.     Defendant Dennis D. Ballinger, SR. ("Ballinger SR") is an Illinois resident, or does business in Illinois and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and through and in conjunction with Defendant Empire Tax, and/or Defendant Vista Securities.  For example, Defendant Ballinger purchased 222 properties at the 2006 tax sale and 190 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

28.     Defendant Dennis D. Ballinger, JR. ("Ballinger JR") is an Illinois resident, or does business in Illinois and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and through and in conjunction with Defendant Empire Tax, and/or Defendant Vista Securities.  For example,

Defendant Ballinger purchased 222 properties at the 2006 tax sale and 190 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

29.     Defendant Empire Tax Corp. ("Empire") is an Illinois corporation that knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendant Ballinger. For example, Defendant Empire purchased 60 properties at the 2006 tax sale and 135properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

30.     Defendant Vista Securities, Inc. ("Vista") is an Illinois corporation that knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendant Ballinger. For example, Defendant Vista purchased 92 properties at the 2006 tax sale and 133properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

31.     Defendants Ballinger, Empire, and Vista are hereafter collectively referred to as the "Ballinger Defendants."

32.     Defendant John Vassen is an Illinois resident, or does business in Illinois and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and through and in conjunction with Defendants Joseph Vassen and VI. For example, Defendant John Vassen purchased 296 properties at the 2006 tax sale and 367 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

33.     Defendant Joseph Vassen is an Illinois resident, or does business in Illinois and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and through and in conjunction with Defendants John Vassen and VI.

34.     Defendant VI, Inc. ("VI") is an Illinois corporation doing business in Illinois and which knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendants John and Joseph Vassen.  For example, Defendant VI purchased 394 properties at the 2006 tax sale and 271 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

35.     Defendants John Vassen, Joseph Vassen, and VI are hereafter collectively referred to as the "Vassen Defendants."

36.     Defendant Scott McLean ("McLean") is an Illinois resident, or does business in Illinois and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendant Land of Lincoln, White Oaks and/or Algonquin.

37.     Defendant Land of Lincoln Securities, LLC ("Land of Lincoln") is an Illinois limited liability company that knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendant McLean.  For example, Defendant Land of Lincoln purchased 675 properties at the 2006 tax sale at the conspiratorial maximum 18% interest rate.

38.     Defendant White Oak Securities, LLC ("White Oaks") is an Illinois limited liability company that knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendant McLean.  For example, Defendant White Oak Securities purchased 183 properties (all of the properties that it purchased) at the 2006 tax sale at the conspiratorial maximum 18% interest rate.

39.     Defendant Algonquin Securities, LLC ("Algonquin") is an Illinois limited liability company that knowingly participated in the agreements and conspiracy alleged in more detail in

paragraphs 70 through 102 below, both individually and in conjunction with Defendant McLean. Defendant Algonquin purchased 163 properties (98.8% of all the properties it purchased) at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

40.     Defendants McLean, White Oaks, Algonquin and Defendant Land of Lincoln are hereafter collectively referred to as the "McLean Defendants."

41.     Defendant Scott Sieron ("Sieron") is an Illinois resident, or does business in Illinois, and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendant Raven Securities.

42.     Defendant Raven Securities, Inc. ("Raven") is an Illinois corporation that knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below, both individually and in conjunction with Defendant Sieron.  For example, Defendant Raven purchased 732 properties at the 2006 tax sale and 631 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

43.     Defendants Sieron and Raven, are collectively hereafter referred to as the "Sieron Defendants."

44.     Defendant John Scott is an Illinois resident, or does business in Illinois, and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 70 through 102 below.

45.     Defendant Edward Beasley ("Beasley") is an Illinois resident, or does business in Illinois and knowingly participated in the agreements and conspiracy alleged in more detail in paragraphs 78 through 102 below individually.  For example, Defendant Beasley purchased 81

properties at the 2006 tax sale and 111 properties at the 2007 tax sale at the conspiratorial maximum 18% interest rate.

46.     Plaintiffs anticipate that discovery in this case may reveal that other individuals or companies also participated in the conspiracy and actions described below, and that it may be necessary to add them as defendants.

## Jurisdiction and Venue

47.     Plaintiffs bring this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and for a violation of Section 2 of the Sherman Act, 15 U.S.C, § 2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

48.     Venue is proper pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.  The Defendants transact business in this district, and are subject to personal jurisdiction in this district.

49.     Class members were injured in this district.

## Trade and Commerce

50.     During the time period covered by this litigation, the business activities of Defendants and co-conspirators that are the subject of this litigation, were within the flow of and substantially affected, interstate trade and commerce.

## The Class Which Plaintiffs Represent

51.     Plaintiffs bring this action on behalf of themselves and all persons aggrieved by the aforesaid tax sale conspiracy, including persons who owned any parcel of property that was sold at a St. Clair County Tax sale auction for unpaid real estate taxes in 2006 and 2007 with respect to which a Certificate of Purchase was obtained at such auction in response to a penalty

rate bid in excess of 0% and any tax buyer who participated in the 2006 or 2007 tax sale who was not part of the conspiracy.

**Overview of the Illinois Tax Sale Procedure**

52.     The Illinois Property Tax Code authorizes real property to be taxed. To begin the collection of property taxes, the treasurer/collector first mails tax bills to property owners. Should the tax bill not be paid in a timely fashion, the property is considered to be delinquent. The Illinois Property Tax Code has a detailed statutory procedure for dealing with the collection of delinquent property taxes. 35 ILCS 200/21-190 *et seq.*

53.     The tax sale process begins when the county collector applies to the court for a judgment and order of sale with respect to delinquent parcels. 35 ILCS 20/21-150. The court then enters an order directing the collector to sell the delinquent parcels. *Id.*

54.     The County Collector, the County Treasurer in the instant case, then conducts the tax sale. 35 ILCS 200/21-205. At the tax sale, the properties subject to sale for delinquent taxes are offered for sale via auction, individually, on a parcel by parcel basis.

55.     However, property owners have a right of redemption. The property owner may redeem his or her property even after the tax sale by paying the amounts set forth in 35 ILCS 200/21-355. These payments are made directly to the county clerk. *Id.*

56.     The right of redemption is guaranteed by the Illinois Constitution. (Ill. Const. 1970, art. IX, § 8). The period of redemption varies with the type of property and ranges from 6 months to 2 ½ years. 35 ILCS 200/21-350. However, a tax purchaser may agree to extend the redemption period for up to three years from the sale date. 35 ILCS 200/21-385.

57.     The redemption amount has two main components. The first is the "certificate amount" which is "all tax principal, special assessments, interest and penalties paid by the tax purchaser together with costs and fees of sale." 35 ILCS 200/21-355(a).

58.     In addition, to the certificate amount, the property owner must also pay the "penalty amount" which is equal to the certificate amount multiplied by the accrued penalty percentage rate. 35 ILCS 200/21-355(b).

59.     The successful bidder on a particular parcel at the tax sale establishes the initial penalty rate that the owner of the property will have to pay, in addition to the outstanding taxes and fees, to redeem the property should he or she choose to do so.

60.     Because a successful purchaser of a parcel at the tax sale is required to pay to the County, as a matter of law, all tax principal, special assessments, interest and penalties, potential purchasers do not bid a monetary amount for each parcel, but rather bid the initial penalty rate they are willing to charge the original property holder should the property owner seek to redeem the property. The person at the sale offering to pay the amount due on each property and to charge the **least** penalty percentage is the successful bidder for that property. 35 ILCS 200/21-215.  The penalty rate such person bids establishes the initial penalty rate that must be paid by an owner seeking to redeem his or her property.   Although the maximum penalty percentage that may be bid is 18%, the code envisions that the public sale process will foster competition in bidding, reducing that percentage, thereby enabling property owners to redeem their property for the lowest amount. See *Phoenix Bond & Indem. Co. v. Pappas*, 194 Ill.2d 99, 107 (2000).  The collector's deputy who acts as auctioneer is obligated to engage in a "reverse auction" process whereby he solicits and accepts bids to obtain this least penalty percentage.

61.     The accrued penalty starts with a penalty rate that is set during the tax sale, and increases every six months that the property is not redeemed. *Id*.  35 ILCS 200/21-355(b).

62.     Purchasing certificates of purchase at tax sales is often quite profitable. When a property owner redeems property that was sold at a tax sale, both the certificate amount and the additional penalty amount that they pay to the County is in turn paid by the County to the tax purchaser, and the property is released back to its redeeming owner.

63.     The tax purchaser thus receives the certificate amount (the amount of delinquent taxes, special assessment, interest, penalties paid by the tax purchaser) plus the certificate amount multiplied by the penalty percentage. 35 ILCS 200/21-355. Because the penalty rate increases every six months by the amount of the initial penalty rate that was originally bid, increasing the initial penalty bid amount drastically increases the amounts that will have to be paid over time to redeem the property.

64.     For example, the following chart illustrates how the penalty percentage is increased as time elapses under two scenarios, first showing a winning bid of 18% and the showing a winning bid of 5%[1]:

| Penalty Rate set by Bidding | Penalty Rate after 6 months | Penalty Rate after 12 months | Penalty Rate after 18 Months | Penalty Rate after 24 months | Penalty Rate after 30 months |
|---|---|---|---|---|---|
| 18% | 36% | 54% | 72% | 90% | 108% |
| 5% | 10% | 15% | 20% | 25% | 30% |

65.     Thus, if a tax purchaser bid in at an 18% penalty rate, but the property is redeemed after 30 months has elapsed, the redeeming property owner would have to pay **more** in

---

[1] Numerous other miscellaneous charges are set forth in 35 ILCS 200/21-55(c)-(k).

penalty than the amount of taxes that were owed. In such a situation, the tax purchaser has more than doubled his or her investment in less than three years.

66.     On the other hand, if the property is not redeemed, the tax purchaser may file a petition for a tax deed. 35 ILCS 200/22-30. Once a tax deed is issued, it conveys merchantable title, free and clear from **any previous** interest in the property (subject to certain easements). *See* 35 ILCS 200/22-55; 200/22-70. Since the amount of taxes due is frequently less than the market value of the property, the tax sale purchaser obtains the property at less than market value. Due to the threat of a tax deed and the fact that the amounts in issue are typically far less than the market value of the property, the vast majority of properties are redeemed following a tax sale. In the event that a property owner is unable to redeem the taxes, it is common for a mortgage or other lien holder to redeem on behalf of the property owner in order to preserve their interest in the property.

67.     Such redemptions are still deemed to have been made by the property owner, however.  *See* 35 ILCS 200/21-345 (noting any redemption is presumed to be on behalf of the property owner, and a person redeeming on behalf of the owner has a right of contribution from the owner).

68.     In a common scenario, a bank will redeem the property for the property owner in order to protect the bank's interest, and add the amount paid to the property owner's mortgage. Thus, the property owner ultimately bears the cost of the redemption, including the penalty amount.

69.     The St. Clair County annual tax sale constitutes a substantial portion of trade or commerce of the State of Illinois, as it involves the collection of millions of dollars in tax dollars and affects tax liens on a substantial number of Madison County real estate parcels.  Defendants'

conduct complained of herein has taken place in and affected, and directly, substantially and foreseeably restrained, the interstate and foreign trade and commerce of the United States.

### The Conspiracy

70.     Suarez was elected to be the St. Clair County, Illinois County Treasurer.  Suarez served as the St. Clair County Treasurer at all times relevant hereto.

71.     All of Suarez's actions alleged herein were undertaken both as an individual, and in his official capacity as St. Clair County Treasurer and Ex-Officio Madison County Collector.

72.     During Suarez's tenure, the tax sales were held following the close of the prior tax year.

73.     Tax sales in Illinois are conducted in a manner which, as designed by statute, allowed potential tax purchasers to make sequentially lower bids on the amount of penalty that would be assessed.  Thus, if the first bidder bid a penalty rate of the statutory maximum 18%, a competing bidder could bid 17%, who could then be outbid at 16% etc., until no one was willing to go any lower.   The tax sale average bid rate for neighboring Madison County was 3.3% for the year 2013 taxes auctioned in 2014, for example.

74.     Beginning at least as early as November 2006 however, Suarez and the other Defendants entered into an agreement and conspiracy pursuant to which:

> a.     Suarez agreed with each Tax Purchaser Defendant to change the bidding process to allow each co-conspirator Tax Purchaser Defendant to purchase delinquent properties at an interest rate of the maximum 18%.  Each of the Tax Purchaser Defendants, and perhaps others, agreed with Suarez and/or each other to bid the statutory maximum of 18% in the bidding process.

      b.     Suarez ensured that the Tax Purchaser Defendants were recognized by the auctioneer as winning bidders, and directed the auctioneer to disperse the winning bids from the various auctions between such Tax Purchaser Defendants.

      c.     Although the auctioneer's role as the delegate of Suarez was to foster competition in order to obtain the lowest penalty percentage, in fact the auctioneer acted in concert with the conspiracy by accepting the bids at the statutory maximum of 18% and by dispersing sales to the Tax Purchaser Defendants, as directed by Suarez. The conspirators purchased over 2,800 properties at the 2006 tax sale and over 2,200 properties at the 2007 tax sale at the conspiratorial 18% maximum penalty.

      d.     As an act in furtherance of the conspiracy, the Suarez Auctioneer refused to recognize trailing lower bids from other tax buyers not a part of the conspiracy.

      e.     Suarez used a seating arrangement at his tax auctions that seated his co-conspirators at the front of the auction room to enable his Auctioneer to award bids to those conspirators more easily.

      f.     As an act in furtherance of the conspiracy, and in order to conceal and cover-up the actual conspiracy, the conspirators agreed that other bids would be allowed on some of the less lucrative properties.

75.    As the "decision" of the Tax Purchaser Defendants to only bid the maximum penalty rate amount became evident, the tax sale auction marketplace was negatively affected, and other putative purchasers also began to bid higher than they otherwise would have bid.

76.    Because there was no or virtually no competitive bidding, the bidding was rigged, prices were fixed, and almost every single property was sold at the statutory maximum penalty percentage of 18%.

77.     The agreements and conspiracies of the Defendants had a drastic effect on the St. Clair County tax sales and on the plaintiffs and the class.  For the tax year 2005, the average penalty rate at which properties were sold was 6.3%.  When comparing the 2005 tax sale with the tax sales for 2006 and 2007, the average penalty rate for properties was increased by over 250% for the 2006 tax sale and by over 260% for the tax year 2007.

78.     Suarez, in concert with the Tax Purchaser Defendants and the auctioneer, thus perpetuated and conducted a system which eliminated competition, and was designed to inflate the prices to be paid by home owners to redeem their homes, and to ensure that substantially all properties would be sold to the Tax Purchaser Defendants at the statutory maximum penalty rate of 18%.

79.     Defendant Suarez received campaign contributions and/or other support from numerous tax purchasers.  Suarez, or his Democrat Party of St. Clair County, received "political contributions" from the Tax Purchaser Defendants including:  John Vassen $21,333; Scott Mc Clean $20,973; Barrett Rochman $19,370; Dennis Ballinger $16,080; Scott Sieron $13,100; JAB LLC $1,700 and Salta Group $1,450.

80.     That the Defendants conspired and agreed to keep their illegal agreement secret from anyone and engaged in conduct designed to conceal their agreement by, for example, directing some of the "contributions" to the Democrat Party of St. Clair County instead of directly to Suarez.

81.     The Defendants engaged in a conspiracy that successfully and illegally rigged a public auction which, by its very nature, was inherently self-concealing.

82.     In 2013 and 2014 several Defendants herein, Rochman, Vassen and McClean pleaded guilty in Federal District Court in the Southern District of Illinois to conspiracy charges

in connection with the bribery of the former Madison County Treasurer, Fred Bathon in Madison County tax sales.  Bathon also pleaded guilty to the conspiracy charges.  The Madison County conspiracy contained the same elements as the St. Clair County bid-rigging as alleged herein, including "political contributions" to the Treasurer and the Treasurer awarding 18% bids at the auctions to the other named conspirators.

83.     In absence of the agreement between the Tax Purchaser Defendants, the Tax Purchaser Defendants would have otherwise been competitors with one another and with other legitimate tax buyers.

84.     Suarez acted in his own personal interest, as well as on behalf of the County, in rigging the auction property tax sales, because he did so in part to encourage campaign contributions from the Tax Purchaser Defendants or their affiliates, and/or to reward the Tax Purchaser Defendants for their past campaign contributions.

85.     The Defendants, at a minimum, participated in the scheme and conspiracy set forth herein with actual knowledge that the process for awarding bids did not comport with Illinois law.

86.     As shown and described above, the conspiring Defendants had the winning bid on over 80% of the parcels sold to the public for tax year 2006 and over 67% of the parcels sold to the public for tax year 2007.

### The Damages

87.     As a result of these actions, Plaintiffs and similarly situated property owners whose properties were subject to the tainted tax sales for tax years 2006 and 2007 have been damaged. Plaintiff and such property owners were forced to redeem their properties (either directly or through others who redeemed the properties in their name and on their behalf) at an

inflated penalty amount due to the above-described actions.  Still others, failing to redeem lost fee-simple title to their properties.

## The Secrecy and Concealment of the Defendants' Wrongful Acts

88.     Defendants reached their agreements and agreed to take their concerted acts in secret and silence, and Suarez concealed that his conspiracy and agreements were methods of encouraging and rewarding campaign contributions, and the auctions had the appearance of a competitive bidding operation, such that Plaintiffs and the members of the class were prevented from learning of their causes of action and neither Plaintiffs nor any member of the class had, or reasonably could have had, known of the wrongdoing or their causes of action until such time as the conspiracy was revealed in June 2014.

89.     Until June of 2014, neither Plaintiffs nor the Class Members had knowledge of any of the foregoing violations nor could they have discovered through reasonable diligence that Defendants and their co-conspirators had engaged in the foregoing violations, since Defendants and their co-conspirators actively and fraudulently concealed these violations to obscure their illegal activity by meeting and discussing among themselves for the express purpose of rigging the public auction.

90.     The Plaintiffs and members of the class were unaware of and did not learn of Defendants' conspiracy until approximately June of 2014, when it was publicly disclosed by the Treasurer of Madison County, Kurt Prenzler, after much research and analyzing different and seemingly unrelated records, that Defendant, Charles Suarez, had accepted "political contributions" from the Defendants and that these same Defendants had purchased properties in St. Clair County at the maximum 18% interest rate.

91.     The connection between Charles Suarez and Defendants Rothman, Vassen and McClean and that Defendants had engaged in a conspiracy to rig public auctions for the real estate tax sales in St. Clair County during the Class Period was disclosed for the first time in June 2014.

92.     Defendants and their co-conspirators' fraudulent concealment tolled the statute of limitations applicable to the claims of Plaintiffs and the Class Members.

<u>**The Federal Indictments**</u>

93.     On February 5, 2013, former Madison County Treasurer Bathon was charged by the U.S. Attorney's Office for the Southern District of Illinois with violating the Sherman Antitrust Act (15 U.S.C. § 1).  *See* Case No. 13-CR-30025-DRH [Doc.2]. The charge was based on Bathon's activities in conducting tax sales within Madison County, Illinois, and included charges of collusion and price fixing.

94.     Bathon pled guilty to the charge the same day. *See* Case No. 13-CR-30025-DRH [Doc. 4]. Bathon was sentenced on December 6, 2013.  The Stipulation Of Facts signed by Bathon *See* Case No. 13-CR-30025-DRH [Doc. 5]admitted that, as Treasurer, he "participated in this bid rigging and price fixing scheme and permitted the collusion while structuring the tax sale to reward bidders who were also campaign contributors…instituted a "no trailing bid policy"…utilized a seating chart to ensure that his campaign contributors were in close proximity to the auctioneer…and directed the auctioneer to disperse winning bids between his largest campaign contributors."  **See Exhibit 1.**

95.     As part of his guilty plea, Bathon admitted that he implemented a "no trailing bid" policy which eliminated the competitive process, and that he participated in a bid rigging and price fixing scheme to reward tax bidders who were also campaign contributors. Bathon further

admitted that he utilized a seating chart to ensure campaign contributors (the Tax Purchaser Defendants) would be recognized as the winning bidder, and further directed the auctioneer to disperse winning bids amongst his largest campaign contributors.

96.     On October 17, 2013 Defendants Scott McLean, Barrett Rochman, and John Vassen also entered into guilty pleas to federal antitrust charges based on their involvement with Defendant Bathon and the Madison County tax sales.  McLean and Vassen were sentenced on February 19, 2014.  The Stipulations Of Facts related to the guilty pleas of McClean, Rochman and Vassen are attached hereto as **Exhibits, 2, 3 and 4**.  These stipulations of fact all relate that Rochman, McClean and Vassen "reached an implicit mutual understanding that they would…not compete to reduce the interest rate" and that they would make "…campaign contributions…" so that the Treasurer  "…would continue structuring the tax sale in a way that maximized the interest rate…"  and that the conspirators' bids were "…collusive and noncompetitive."  **See Exhibits 2, 3 and 4 attached hereto.**

97.     As part of the guilty pleas, these Defendants admitted that they "reached an implicit mutual understanding that they would typically bid only the statutory maximum interest rate of 18 percent and not compete to reduce the interest rate when purchasing property tax liens at the Madison County tax sale. The tax buyers submitted collusive and non-competitive bids for the maximum rate and refrained from submitting bids at lesser interest rates."

98.     These Defendants further admitted that they made campaign contributions to Bathon so that he would continue to structure the tax sale in a way that maximized the interest rate applied to tax liens sold at the Madison County sales.

99.     Defendant Charles Suarez, Treasurer of St. Clair County, held the same positon as Bathon but in St. Clair County.  Suarez controlled the tax sale process in St. Clair County and

was able to steer lucrative tax sales at the maximum interest penalty rate of 18% to his fellow conspirators.

100.    Defendant Charles Suarez received substantial "political contributions" from the same Defendants (Defendants Vassen, Rochman and McClean) that have previously pleaded guilty to bribing Madison county Treasurer Fred Bathon during the same time period.

101.    These convicted Defendants (Vassen, Rochman and McClean) also were awarded lucrative properties at the St. Clair County tax sales for the years 2006 and 2007 at the maximum penalty rate allowed by law, 18%.

102.    The Tax Buyer Defendants (Vassen, Rochman and McClean) in the instant case are the same as the Madison County tax buyers in the Bathon case; the time period is the same (tax years 2006-2007) as the Bathon case; the maximum penalty rate (18%) is the same as the Bathon case; the "political contributions" to Suarez are the same as in the Bathon case; the identical seating scheme was used to promote the conspiracy as in the Bathon case; an employee "spotter" was used to promote the instant conspiracy the same as in the Bathon case.  Although the main conspirator has changed from Bathon to Suarez, the *modus operendi* is identical in the two cases.


## The Plaintiffs—Class Action Allegations

103.    Plaintiffs bring this action on behalf of themselves and all persons who owned any parcel of property that was sold at a St. Clair County tax sale auction for the tax years 2006 and 2007 and with respect to which a Certificate of Purchase was obtained at such auction in response to a penalty rate bid in excess of 0% and on behalf of all legitimate tax buyers at the 2006 and 2007 St. Clair County tax sales.

104.     This action is properly brought as a class action under 735 ILCS 5/2-801 *et seq.* as more fully set forth below, because the Plaintiffs, the proposed class, and proposed class counsel all meet the requirements for class certification.

105.     Upon information and belief, the number of parcels sold at of the annual tax sales at issue was 4486 parcels for tax year 2006 and 3384 parcels for tax year 2007. Accordingly, the potential number of class members is in the thousands.

106.     Consequently, the class is so numerous that joinder of all class members is impracticable.

107.     Plaintiffs' claims are typical of the class.  All Plaintiffs are St. Clair County property owners whose property was sold at a tax sale conducted by Suarez for the tax years 2006 and 2007 and which was sold, as a result of the actions, agreements, and/or conspiracies alleged herein, at a penalty percentage in excess of 0% and participating legitimate tax buyers. As a result, Plaintiffs were forced to redeem their property at an inflated amount, and were thereby damaged.  Still others, failing to redeem lost fee-simple title to their properties.

108.     Further, there are questions of both fact and law common to Plaintiffs and to the members of the class.

109.     The proposed class members have all been aggrieved by the same conduct by Defendants.

110.     The common questions predominate over any question that may exist with respect to an individual class member. The common issues include, but are not limited to, the following:

        a.     How the St. Clair County tax sales were conducted for the years in question;

        b.     Whether Defendants made campaign contributions to Suarez;

    c.       The number of parcels successfully bid on by each Defendant;

    d.       Whether the Defendants participated in a conspiracy, as alleged herein;

    e.       Whether Suarez awarding bids at the tax sales in question to his campaign contributors comports with Illinois law; and

    f.       Whether the conduct of the St. Clair County tax sales directed by Suarez resulted in increased penalty bids.

111.    The representative parties and counsel will fairly and adequately protect the interest of the class.

112.    The proposed Class Plaintiffs have no interests that are adverse to the interests of the members of the class, and do not seek any relief that would be antagonistic to that of the class.

113.    Proposed class counsel is experienced in this type of litigation. Counsel has previously litigated class actions as counsel for both plaintiffs and defendants, and has previously handled class action lawsuits against governmental entities involving tax issues.

114.    Finally, the class action is an appropriate method for the fair and efficient adjudication of the controversy in that

    a.       The injury suffered by each plaintiff is such  an amount that the expense and burden of individual litigation would be such as to prevent the class members from individually pursuing their claims;

    b.       A class action will avoid inconsistent adjudications;

    c.       A class action will promote judicial economy by avoiding duplicity of lawsuits; and

      d.     Plaintiffs and their counsel are not aware of any difficulties which would render this matter inappropriate for resolution via class action.

### Count I: Civil Conspiracy
### (against all Defendants)

115.    Plaintiffs restate and reallege paragraphs 1-114 as if fully stated herein.

116.    Specifically, and as previously set forth in more detail above:

      a.     The Tax Purchaser Defendants made campaign contributions to Defendant Suarez to encourage and incentivize him to structure the tax sale in such a manner to eliminate competitive bidding, and to disperse the winning bids amongst his largest campaign contributors;

      b.     Defendant Suarez neglected and refused to automate the St. Clair County tax sale bidding process to aid him in eliminating competitive bidding at the annual tax sale;

      c.     Defendant Suarez further directed his employees awarding bids at the tax sales to disperse the winning bids amongst his campaign contributors.  These employees joined in the conspiracy and took actions in furtherance of the conspiracy by failing to comply with their statutory roles as the delegate of Suarez and the auctioneer to foster competition in order to obtain the lowest penalty percentage and by accepting the bids at the statutory maximum of 18% and by dispersing sales to the Tax Purchaser Defendants;

      d.     The Tax Purchaser Defendants reached an implicit or explicit agreement to submit only bids at the maximum penalty rate of 18%, and as part of their agreement did in fact only submit bids at 18%, which Defendant Suarez' employees and conspirators accepted without fostering competition among the bidders

117.    Said actions and agreements by each of the Defendants constitutes an agreement to accomplish, by concerted action, either an unlawful purpose or a lawful purpose by unlawful means.

118.    Each of the Defendants knowingly and voluntarily participated in the common scheme set forth in more detail in the paragraphs above.

119.    In connection with the conspiracy, numerous tortious acts were undertaken, as set forth above.

120.    The above-referenced acts undertaken by Defendants as part of the conspiracy and in furtherance of said conspiracy, resulted in damages and injuries to Plaintiffs and to members of the proposed class.

121.    The actions taken by the Defendants were willful and outrageous and justify the imposition of punitive damages.

WHEREFORE Plaintiffs John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak, individually, and on behalf of each member of the proposed class, respectfully request that the Court grant the following relief, against all Defendants, jointly and severally:

a.    Enter an Order certifying this action as a class action and appointing Plaintiffs as representatives of the class. The class consists of all St. Clair County property owners whose properties were sold at a tax sale conducted in 2006 and 2007 at a penalty rate of over 0%;

b.    Enter an Order appointing undersigned counsel as counsel for the class;

c.    Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

d.      Enter an Order allowing class members to recover on the bonds posted by

Suarez both as County Collector and County Treasurer;

e.      Enter a judgment awarding class counsel reasonable attorney's fees, and

all costs and expenses of this action to be paid by the Defendants, and to require the

Defendants to pay the costs and expenses of class notice and claim administration; and

f.      Grant such other and further relief as this Court deems just and proper.

### Count II: Money Had and Received
**(against all Defendants except Suarez)**

122.    Plaintiffs restate and reallege paragraphs 1-121 as if fully stated herein.

123.    By statute, St. Clair County property owners are required to make payments to the

county treasurer's office in order to redeem their property.

124.    Once a redemption payment is received by the county treasurer's office, it is

passed along to the certificate holder.

125.    Consequently, all Defendants are in receipt of funds from properties redeemed by

St. Clair County property owners, including Plaintiffs.

126.    Under the circumstances, as more fully set forth above, it would be unjust for the

Defendants to retain any funds obtained by the excessive penalty rate charged to St. Clair County

property owners.

WHEREFORE Plaintiffs John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and

Kathleen Dvorak, individually, and on behalf of each member of the proposed class, respectfully

request that the Court grant the following relief, against all Defendants, jointly and severally:

a.      Enter an Order certifying this action as a class action and appointing

Plaintiffs as representatives of the class. The class consists of all St. Clair County

property owners whose properties were sold at a tax sale conducted in 2006 and 2007 at a penalty rate in excess of 0%;

      b.     Enter an Order appointing undersigned counsel as counsel for the class;

      c.     Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

      d.     Enter an Order allowing class members to recover on the bonds posted by Suarez both as County Collector and County Treasurer;

      e.     Enter a judgment awarding class counsel reasonable attorney's fees, and all costs and expenses of this action to be paid by the Defendants, and to require the Defendants to pay the costs and expenses of class notice and claim administration; and

      f.     Grant such other and further relief as this Court deems just and proper.

## Count III: Violations of Section 1 of the Sherman Act
### (against all Defendants)

127.    Plaintiffs restate and reallege paragraphs 1 – 126 as if fully set forth herein.

128.    Suarez and the Tax Purchaser Defendants willfully entered into and engaged in a contract, combination, or conspiracy with persons who would otherwise have been competitors to suppress and restrain competition in the St. Clair County Tax sale auction process for tax years 2006 and 2007 by taking the actions and inactions, and entering into the conspiracy, understandings, and agreements set forth above.

129.    As set forth above, Suarez and the Tax Purchase Defendants, by contract, combination, or conspiracy, unreasonably restrained trade, and/or commerce by controlling and limiting competition to bid on properties, which had the effect of eliminating competitors from

attempting to purchase properties, and artificially inflating the penalty rate to be paid by property owners to redeem their properties, including Plaintiffs and the members of the Class.

130.    The conduct of Suarez and the Tax Purchaser Defendants specifically had the effect of fixing, controlling or maintaining the penalty rate which would be charged to property owners seeking to redeem their properties after such tax sales in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and for the purpose of concealing their wrongful acts.

131.    The conduct of Suarez and the Tax Purchaser Defendants specifically had the effect of preventing other competitors from receiving the winning bid at the tax sale auctions.

132.    Defendants did so by, among other things, fixing, controlling, maintaining, limiting, and/or discontinuing the bidding of lower rates during the auction process, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and by keeping their agreements and activities secret and concealed.

133.    The actions and inactions of Defendants described herein injured Plaintiffs and each member of the Class in their business or property.

134.    Defendants also did so with the purpose and effect of allocating or dividing the sale of tax purchase certificates in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)and for the purpose of keeping their activities secret and concealed.

135.    The actions and inactions of Defendants described herein were the proximate cause of injury to Plaintiffs and each member of the Class in their business or property.

136.    The above described conspiracy existed and negatively and unreasonably restrained trade, by leading to virtually all properties being sold at the maximum penalty bid of 18%.

137.     The actions of Suarez and each of the Tax Purchaser Defendants were willful and wanton.

138.     Plaintiffs and each member of the class have suffered antitrust injury and accordingly are entitled to recover their actual damages suffered as a result of the Defendants actions set forth herein, together with the costs and reasonable attorneys fees incurred in connection with this action, such damages should be properly increased to three times the amount of actual damages suffered pursuant to Section 4 of the Clayton Act (15 U.S.C § 15) ,and such other amounts as the Court deems just, in addition to all other remedies set forth in 15 U.SC. § 1 *et seq.*

WHEREFORE Plaintiffs John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak, individually, and on behalf of each member of the proposed class, respectfully request that the Court grant the following relief, against all Defendants, jointly and severally:

a.       Enter an Order that a contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this Complaint, be adjudged to have been a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

b.       Enter an Order certifying this action as a class action and appointing Plaintiffs as representatives of the class. The class consists of all St. Clair County property owners whose properties were sold at a tax sales for tax years 2006 and 2007  at a penalty rate in excess of 0%;

c.       Enter an Order appointing undersigned counsel as counsel for the class;

d.      Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

e.      Enter an Order awarding treble damages to Plaintiffs and members of the proposed class;

f.      Enter an Order allowing class members to recover on the bonds posted by Suarez both as County Collector and County Treasurer;

g.      Enter a judgment awarding class counsel reasonable attorney's fees, and all costs and expenses of this action to be paid by the Defendants pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and to require the Defendants to pay the costs and expenses of class notice and claim administration; and

h.      Grant such other and further relief as this Court deems just and proper.

## Count IV - Violations of section 2 of the Sherman Act
## (against All Defendants)

139.    Plaintiffs restate and reallege paragraphs 1 – 138 as if fully set forth herein.

140.    By engaging in the foregoing actions and inactions, Defendants established, maintained, used, and/or attempted to acquire monopoly power over a substantial part of the St. Clair County Tax Sale and redemption of property process for the purpose of excluding competition or of controlling, fixing, and/or maintaining prices in such trade or commerce in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).  These activities have gone beyond that which could be considered as "legitimate business activities," and are an abuse of market position.

141.    The actions and inactions of Defendants described herein were the proximate cause of injury to Plaintiffs and each member of the Class in their business or property,

142.    The actions of Suarez and each of the Tax Purchaser Defendants were willful.

143.    Plaintiffs and each member of the class have suffered antitrust injury and accordingly are entitled to recover their actual damages suffered as a result of the Defendants actions set forth herein, together with the costs and reasonable attorneys fees incurred in connection with this action, such damages should be properly increased to three times the amount of actual damages suffered pursuant to Section 4 of the Clayton Act (15 U.S.C § 15) ,and such other amounts as the Court deems just, in addition to all other remedies set forth in 15 U.SC. § 2 *et seq*.

WHEREFORE Plaintiffs, John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak individually, and on behalf of each member of the proposed class, respectfully request that the Court grant the following relief, against all Defendants, jointly and severally:

a.    Enter an Order that Defendants and their co-conspirators actions to illegally acquire and maintain monopoly power in the relevant product market to have been in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

b.    Enter an Order certifying this action as a class action and appointing Plaintiffs as representatives of the class. The class consists of all St. Clair County property owners whose properties were sold at a tax sales for the years 2006 and 2007 at a penalty rate in excess of 0%;

c.    Enter an Order appointing undersigned counsel as counsel for the class;

d.      Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

e.      Enter an Order awarding treble damages to Plaintiffs and members of the proposed class;

f.      Enter an Order allowing class members to recover on the bonds posted by Suarez both as County Collector and County Treasurer;

g.      Enter a judgment awarding class counsel reasonable attorney's fees, and all costs and expenses of this action to be paid by the Defendants pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and to require the Defendants to pay the costs and expenses of class notice and claim administration; and

h.      Grant such other and further relief as this Court deems just and proper.

## Count V: Violations of Section 3(1) of the Illinois Antitrust Act
### (against all Defendants)

144.    Plaintiffs restate and reallege paragraphs 1 – 143 as if fully set forth herein.

145.    Suarez and the Tax Purchaser Defendants willfully entered into and engaged in a contract, combination, or conspiracy with persons who would otherwise have been competitors to suppress and restrain competition in the St. Clair County Tax sale auction process for tax years 2006 and 2007 by taking the actions and inactions, and entering into the conspiracy, understandings, and agreements set forth above.

146.    Suarez and Tax Purchaser Defendants did so for the purpose of, and/or with the effect of fixing, controlling or maintaining the penalty rate which would be charged to property

owners seeking to redeem their properties after such tax sales in violation of section 3(1)(a) of the Illinois Antitrust Act (740 ILCS 10/1, et seq.) and for the further purpose of concealing their wrongful acts.

147.   Defendants did so by, among other things, fixing, controlling, maintaining, limiting, and/or discontinuing the bidding of lower rates during the auction process, in violation of section 3(1)(b) of the Illinois Antitrust Act and by keeping their agreements and activities secret and concealed.

148.   Defendants also did so with the purpose and effect of allocating or dividing the sale of tax purchase certificates in violation of section 3(1)(c) of the Illinois Antitrust Act and for the purpose of keeping their activities secret and concealed.

149.   The actions and inactions of Defendants described herein injured Plaintiffs and each member of the Class in their business or property, entitling Plaintiff and each class member to be awarded three times the amount of their actual damages resulting from such violations, together with costs and reasonable attorney's fees, in addition to all other remedies set forth in 740 ILCS 10/7.

WHEREFORE Plaintiffs John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak, individually, and on behalf of each member of the proposed class, respectfully request that the Court grant the following relief, against all Defendants, jointly and severally:

a.   Enter an Order certifying this action as a class action and appointing Plaintiffs as representatives of the class. The class consists of all St. Clair County property owners whose properties were sold at a tax sales for tax years 2006 and 2007  at a penalty rate in excess of 0%;

b.   Enter an Order appointing undersigned counsel as counsel for the class;

c.      Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

d.      Enter an Order awarding treble damages to Plaintiffs and members of the proposed class;

e.      Enter an Order allowing class members to recover on the bonds posted by Suarez both as County Collector and County Treasurer;

f.      Enter a judgment awarding class counsel reasonable attorney's fees, and all costs and expenses of this action to be paid by the Defendants, and to require the Defendants to pay the costs and expenses of class notice and claim administration; and

g.      Grant such other and further relief as this Court deems just and proper.

### Count VI - Violations of section 3(2) of the Illinois Antitrust Act
### (against all Defendants)

150.    Plaintiffs restate and reallege paragraphs 1 – 149 as if fully set forth herein.

151.    As set forth above, Suarez and the Tax Purchase Defendants, by contract, combination, or conspiracy, unreasonably restrained trade, and/or commerce by controlling and limiting competition to bid on properties, which had the effect of eliminating competitors from attempting to purchase properties, and artificially inflating the penalty rate to be paid by property owners to redeem their properties, including Plaintiffs and the members of the Class.

152.    Said conduct specifically had the effect of preventing other competitors from receiving the winning bid at the tax sale auctions.

153.    The actions and inactions of Defendants described herein injured Plaintiffs and each member of the Class in their business or property.

154.    The above described conspiracy existed and negatively and unreasonably restrained trade, by leading to virtually all properties being sold at the maximum penalty bid of 18%.

155.    The actions of Suarez and each of the Tax Purchaser Defendants were willful and wanton.

156.    Accordingly,  Plaintiffs and each member of the class are entitled to recover their actual damages suffered as a result of the Defendants actions set forth herein, together with the costs and reasonable attorneys fees incurred in connection with this action, and such damages should be properly increased by the Court, in its discretion, to three times the amount of actual damages suffered, or such other amount as the Court deems just, in addition to all other remedies set forth in 740 ILCS 10/7.

WHEREFORE Plaintiffs, John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak, individually, and on behalf of each member of the proposed class, respectfully request that the Court grant the following relief, against all Defendants, jointly and severally:

a.    Enter an Order certifying this action as a class action and appointing Plaintiffs as representatives of the class. The class consists of all St. Clair County property owners whose properties were sold at a tax sales for the years 2006 and 2007 at a penalty rate in excess of 0%;

b.    Enter an Order appointing undersigned counsel as counsel for the class;

c.    Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

d.      Enter an Order awarding treble damages to Plaintiffs and members of the proposed class;

e.      Enter an Order allowing class members to recover on the bonds posted by Suarez both as County Collector and County Treasurer;

f.      Enter a judgment awarding class counsel reasonable attorney's fees, and all costs and expenses of this action to be paid by the Defendants, and to require the Defendants to pay the costs and expenses of class notice and claim administration; and

g.      Grant such other and further relief as this Court deems just and proper.

## Count VII - Violations of section 3(3) of the Illinois Antitrust Act
### (against all Defendants)

157.    Plaintiffs restate and reallege paragraphs 1 – 156 as if fully set forth herein.

158.    By engaging in the foregoing actions and inactions, Defendants established, maintained, used, and/or attempted to acquire monopoly power over a substantial part of the St. Clair County Tax Sale and redemption of property process for the purpose of excluding competition or of controlling, fixing, and/or maintaining prices in such trade or commerce.

159.    The actions and inactions of Defendants described herein injured Plaintiffs and each member of the Class in their business or property.

160.    The actions of Suarez and each of the Tax Purchaser Defendants were willful.

161.    Accordingly, Plaintiffs and each member of the class are entitled to recover their actual damages suffered as a result of the Defendants actions set forth herein, together with the costs and reasonable attorneys fees incurred in connection with this action, and such damages should be properly increased by the Court, in its discretion, to three times the amount of actual

damages suffered, or such other amount as the Court deems just, in addition to all other remedies set forth in 740 ILCS 10/7.

WHEREFORE Plaintiffs John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak, individually, and on behalf of each member of the proposed class, respectfully request that the Court grant the following relief, against all Defendants, jointly and severally:

a. Enter an Order certifying this action as a class action and appointing Plaintiffs as representatives of the class. The class consists of all St. Clair County property owners whose properties were sold at a tax sales for the years 2006 and 2007 at a penalty rate in excess of 0%;

b. Enter an Order appointing undersigned counsel as counsel for the class;

c. Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

d. Enter an Order awarding treble damages to Plaintiffs and members of the proposed class;

e. Enter an Order allowing class members to recover on the bonds posted by Suarez both as County Collector and County Treasurer;

f. Enter a judgment awarding class counsel reasonable attorney's fees, and all costs and expenses of this action to be paid by the Defendants, and to require the Defendants to pay the costs and expenses of class notice and claim administration; and

g. Grant such other and further relief as this Court deems just and proper.

## COUNT VIII: Breach of Fiduciary Duty
### (Against Suarez)

162.     Plaintiffs restate and reallege paragraphs 1- 161 as if fully set forth herein.

163.     Defendant Suarez, as the Treasurer and Collector ex officio for St. Clair County, was a public official with fiduciary duties to St. Clair County and to the people of St. Clair County, including Plaintiffs and those similarly situated.

164.     Among those fiduciary duties was the duty to refrain from self-dealing and the avoidance of conflicts of interest, particularly with regard to areas under his purview including the conduct and oversight of tax lien sales.

165.     Suarez breached such duties by orchestrating, participating in, and overseeing a system under which his campaign contributors would be rewarded with artificially rigged rates of return on their investments in tax debt owned by the County, at the expense of delinquent property owners.

166.     Suarez' breach of his fiduciary duties proximately caused injury to the proposed Class members, in the form of higher prices to redeem their properties.

WHEREFORE Plaintiffs,John R. Bloyer, Jr., Adriane L. Bloyer, Kevin Dvorak and Kathleen Dvorak, individually, and on behalf of each member of the proposed class, respectfully request that the Court grant the following relief, against all Defendants, jointly and severally:

a.     Enter an Order certifying this action as a class action and appointing Plaintiffs as representatives of the class. The class consists of all St. Clair County property owners whose properties were sold at a tax sales for the tax years 2006 and 2007 at a penalty rate in excess of 0%;

b.     Enter an Order appointing undersigned counsel as counsel for the class;

c.    Enter an Order refunding an appropriate amount of money to each class member, measured by the difference of the amount redeemed and the amount that would have been needed to redeem the property at a reasonable and appropriate penalty rate.

d.    Enter an Order allowing class members to recover on the bond posted by Suarez as County Collector and County Treasurer;

e.    Enter a judgment awarding class counsel reasonable attorney's fees, and all costs and expenses of this action to be paid by the Defendants, and to require the Defendants to pay the costs and expenses of class notice and claim administration; and

f.    Grant such other and further relief as this Court deems just and proper.


/s/ Aaron G. Weishaar
One of the Attorneys for Plaintiffs


**GIACOLETTO LAW OFFICE P.C.**

Steven C. Giacoletto
#6204424
30 Summer Tree Lane
Collinsville, IL
(618) 346-8841
(618) 346-8843 (fax)

**LAW OFFICE OF JOHN B. BARBERIS, JR.**

John B. Barberis, Jr.
#06230759
P.O. Box 331
St. Jacob, IL 62281
(618) 570-1837
*Attorneys for Plaintiffs*

**REINERT, WEISHAAR & ASSOCIATES, P.C.**

Aaron G. Weishaar, #6278678
Boris A. Kaupp, #6293098
812 North Collins, Laclede's Landing
St. Louis, MO 63102
(314) 621-5743 Telephone
(314) 621-8071 Facsimile
aweishaar@rwalawfirm.com

**RIEZMAN BERGER P.C.**

Nelson L. Mitten, IBN# 6185899

Paul A. Grote, IBN# 6307831
7700 Bonhomme Ave.,
Seventh Floor
St. Louis, Missouri 63105
P: 314.727.0101
F: 314.727.6458
mitten@riezmanberger.com

grote@riezmanberger.com