IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN R. BLOYER, JR., et al., | |
| Plaintiffs, | |
| vs. | Case No. 14-cv-1119-SMY-PMF |
| ST. CLAIR COUNTY ILLINOIS, et al., | |
| Defendants. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Dennis Ballinger, Sr., Dennis Ballinger, Jr., Empire Tax Corp. and Vista Securities, Inc.'s ("Defendants") Combined Motion to Dismiss Pursuant to Rules 9(a) and 12(b)(6) (Doc. 59). Plaintiffs responded (Doc. 92). For the following reasons, Defendants' motion is **DENIED**.

**BACKGROUND**

Plaintiffs' Complaint (Doc. 2) alleges that persons who owned property located in St. Clair County and who redeemed that property at county tax auctions paid a "penalty" rate in excess of that which would have been required had they not been forced to participate in a "rigged tax sale." Specifically, Defendants Dennis Ballinger, Sr., Dennis Ballinger, Jr., Empire Tax Corp. and Vista Securities, Inc. (referred to collectively in the Complaint as the "Ballinger Defendants") are alleged to have conspired with co-defendants St. Clair Co. and Suarez to diminish competitive bidding in order to ensure that lucrative properties were sold at the statutory maximum penalty percentage of 18% beginning at least as early as November 2006.

Plaintiffs further allege that the Ballinger Defendants knowingly participated in the conspiracy as tax purchasers as follows: Dennis Ballinger Jr. and Dennis Ballinger Sr. are alleged to have purchased 222 properties at the 2006 tax sale and 190 properties at the 2007 tax sale, Empire Tax Corp. is alleged to have purchased 60 properties at the 2006 tax sale and 135

properties at the 2007 tax sale and Vista Securities, Inc. is alleged to have purchased 92 properties at the 2006 tax sale and 133 properties at the 2007 tax sale all at the conspiratorial maximum 18% interest rate.  Plaintiffs claim civil conspiracy against all Defendants (Count I), money had and received against all Defendants except Suarez (Count II), violations of the Sherman Act against all Defendants (Counts III and IV), violations of the Illinois Antitrust Act against all Defendants (Counts V-VII) and breach of fiduciary duty against Suarez (Count VIII).

Defendants contend that Plaintiffs' Complaint (Doc. 2) fails to include the necessary factual allegations to support antitrust claims and the existence of a conspiracy.  Defendants further contend that all of Plaintiffs' claims are time-barred and that the fraudulent concealment claim is insufficient under Fed. R. Civ. P. 9(b).

## DISCUSSION

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008).  This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). [1]

**Statute of Limitations**

Defendants argue for dismissal of all counts as barred by the applicable statute of limitations. They assert that antitrust and conspiracy actions must commence within four years and that a claim for money had and received must commence within five years of the accrual of the claim. Further, Defendants contend that Plaintiffs have failed to adequately allege a proper basis for tolling these statutes of limitations.

Plaintiffs acknowledge the statutes of limitations but argue that the discovery rule tolled the statute of limitations in this case. In support of their position, Plaintiffs cite *Clark v. City of Braidwood*, 318 F.3d 764 (7th Cir. 2003). In *Clark*, the Seventh Circuit held that the question was "whether *any* set of facts that if proven would establish a defense to the statute of limitations..."and that where a plaintiff relies on the discovery rule, a determination of timeliness is premature at the pleading stage. *Clark*, 318 F.3d at 768 (emphasis in original)

The discovery rule "postpones the beginning of the limitations period… to the date when [a plaintiff] discovers he has been injured." *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006), quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990). Therefore, the appropriate inquiry is whether the Complaint pleads sufficient facts that, if proven, would raise a reasonable inference that the limitations period was tolled until 2014 when Plaintiffs discovered the injury. Accepting all allegations of the Complaint as true, the Court finds they are sufficient to raise such an inference.

---

[1] While Defendants entitle their motion "Motion to Dismiss… Pursuant to Rules 9(a) and 12(b)(6)," Defendants' arguments implicate Rule 9(b), not 9(a). Further, Plaintiffs' Complaint does not include a claim for fraud or fraudulent concealment. Plaintiffs raise the issue of fraudulent concealment as a negation to the statute of limitations defense and in regards to the discovery rule. Therefore, Rule 9 is inapplicable. Accordingly, the Court declines to consider Defendants' arguments arising under Rule 9(b).

The Complaint alleges that Defendants and tax purchaser Co-Defendants directed "contributions" to the Democrat Party instead of to Suarez, that Suarez seated Co-Defendants at the front of the auction room to facilitate the conspiracy and that other bids were allowed on less lucrative properties in order to cover up the conspiracy. The Complaint further alleges that Defendants' conspiracy to rig tax auctions was inherently self-concealing so that Plaintiffs could not have discovered through reasonable diligence that they had been injured until 2014. Accordingly, Defendants' motion to dismiss Plaintiffs' claims as barred by the applicable statutes of limitations is denied.

**Civil Conspiracy**

Defendants argue Count I should be dismissed because antitrust claims cannot be asserted as civil conspiracy claims under Illinois law. Plaintiffs respond that independent, actionable tortious conduct is not required and that their Complaint alleges unlawful acts sufficient to plead a claim of civil conspiracy.

Section 9 of the Illinois Antitrust Act provides, "No contract, combination, conspiracy, or other act which violates this Act shall constitute or be deemed a conspiracy at common law." 740 ILCS § 10/9. The Committee Comment clarifies that the purpose of the provision is "*to confine remedies* for what were formerly common law conspiracies to proceedings under the new Act, if violative of the new Act, and thus prevent another form of 'double jeopardy.'" *Id (*emphasis added). The statute is clear that a plaintiff may not *recover* under both theories but is silent as to whether a plaintiff may *allege* both theories.

Defendant cites *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, No. 93-C-5578, 1994 WL 698486, at *4 (N.D. Ill. Dec. 12, 1994) in support of their argument that Section 9 also prohibits Plaintiff from *alleging* a civil conspiracy based upon a purported violation of the Illinois Antitrust Act. The court in *Nichols* did, in fact, hold that a civil conspiracy claim is

4

redundant and duplicative of the antitrust claims arising under the same set of facts and dismissed a conspiracy claim on that basis.

However, the statute does not bar a plaintiff from asserting claims under both theories. In fact, the Committee Comment to Section 9 also states, "an injured party might still recover under the doctrine of a common law conspiracy where the conduct in question did not violate the new Act." 740 ILCS § 10/9. Additionally, plaintiffs may plead alternative legal theories and, at trial, choose which theories of recovery to pursue. Fed. R. Civ. P. 8(d). Accordingly, Defendants' motion as to Count I is denied.

**"Money Had And Received"**

Defendants further argue that Count II should be dismissed because the Complaint fails to state a claim for money had and received. Specifically, Defendants contend that the Illinois Property Tax Code expressly permits an 18% penalty rate. Because no more than an 18% penalty was charged, Defendants argue Plaintiffs' allegations in Count II fail to state a claim.

In Illinois, a plaintiff bringing a claim for money had and received must allege that "(1) he was compelled to pay money to the defendant, (2) the defendant had no legal right to demand the money, and (3) payment was necessary in order to avoid an injury to his business, person or property." *Butitta v. First Mortgage Corp.*, 578 N.E.2d 116, 118-19 (Ill. App. 1991). If allegations demonstrate that the receipt of money is "unjust given the unfair practice under which it was obtained," the claim is sufficient to survive a 12(b)(6) motion to dismiss. *Fields v. Alcon Labs., Inc.*, No. 313CV00197DRHDGW, 2014 WL 1041191, at *4 (S.D. Ill. Mar. 18, 2014).

Here, Plaintiffs allege illegally rigged tax sales that unfairly ensured the highest penalties would be charged. This is sufficient to state a claim for money had and received. Accordingly, Defendants' motion is denied as to Count II.

T**he Sherman Act**

Defendants move to dismiss Counts III and IV for failure to state a claim under Sections 1 and 2 of the Sherman Act.  In particular, Defendants assert that Plaintiffs' claim under Section 1 for unlawful agreement or conspiracy in restraint of trade contains "fundamentally deficient allegations."  Defendants also assert a lack of antitrust injury and defined market under Section 1 and argue that the named Plaintiffs lack standing.  Under Section 2, Defendants assert "fundamentally deficient allegations" of monopoly power and exclusionary conduct and  lack of a market definition.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.  To plead a violation of § 1 of the Sherman Act, a plaintiff must plead: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury."  *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012) (quoting  *Denny's Marina, Inc. v. Renfro Prods., Inc.,* 8 F.3d 1217, 1220 (7th Cir.1993)).

Proof of an explicit agreement is not required to plead a Sherman Act antitrust conspiracy claim.  *United States v. General Motors Corp.*, 384 U.S. 127, 142-43 (2010).  Rather,  a Section 1 claim of conspiracy "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Here, Plaintiffs plead sufficient facts to survive a motion to dismiss.  The factual allegations include specific details about the agreement and how sales were structured to eliminate competition.  This is sufficient to plausibly suggest an illegal conspiracy for purposes of Section 1 of the Sherman Act.

As to the second requirement—an unreasonable restraint of trade in a relevant market resulting from the conspiracy— Plaintiffs must allege a cognizable market on which Defendants' actions could have had anticompetitive effects. *Agnew,* 683 F.3d at 337-338.  "Relevant market" has been defined by the United States Supreme Court as "commodities reasonably interchangeable by consumers for the same purposes." *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  Unless it is inconceivable that Plaintiffs could prove a set of facts supporting the market definition alleged, Count III should not be dismissed.  *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 977 (7th Cir. 1995) (reversing a 12(b)(6) dismissal as erroneous where district court "believed [plaintiff] had not alleged facts to support the complaint's market definition").

Here, Plaintiffs do not provide an explicit definition of the alleged relevant market. Rather, the Complaint allegations provide an overview of the Illinois tax sale procedure, an outline of the situations in which a successful purchaser of property at a tax sale may double his initial investment or gain title to property at less than market value and citations to the Illinois Property Tax Code regarding the public sale process.  Further, the Complaint cites Illinois case law to support the allegation that the Illinois Property Tax Code "envisions that the public sale process will foster competition in bidding, reducing the [penalty rate] percentage, thereby enabling property owners to redeem their property for the lowest amount."  Doc. 2, p. 12, ¶60. The Complaint further alleges that the auctioneer is "obligated to engage in a 'reverse auction' process whereby he solicits and accepts bids to obtain this least penalty percentage." *Id*.

The Court finds that these allegations sufficiently identify the relevant market. Competition is clearly envisioned by the Property Tax Code.  Plaintiffs' allegations reasonably set forth tax lien certificates as products that fall within the definition of commodity.  The

7

Complaint sufficiently defines the relevant market in terms of its product (tax lien certificates) and its location (St. Clair County).

To meet the third requirement, because "[t]he purpose of the Sherman Act is to protect consumers from injury that results from diminished competition," Plaintiffs must allege not only an injury to themselves, but an injury to the market as well. *Agnew,* 683 F.3d at 334-35. "Such injury must involve 'loss [that] comes from acts that reduce output or raise prices to consumers.'" *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 399 (7th Cir. 2006) (quoting *Chi. Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n,* 961 F.2d 667, 670 (7th Cir.1992)).

Contrary to Defendants' contentions, it is not necessary to show that one plaintiff was injured by the sale of another property owner's taxes. What needs to be shown is a loss that comes from acts that raise prices to consumers. Plaintiffs' Complaint alleges an inflated penalty rate caused by Defendants' anticompetitive activity— a rate that Plaintiffs and hundreds of other property owners would have been forced to pay in order to redeem their properties. Doc. 2, p. 18, ¶ 87. These allegations are sufficient to establish injury. Accordingly, Defendants' motion to dismiss Count III is denied.[2]

Section 2 of the Sherman Act, 15 U.S.C. § 2, makes it unlawful for a person or company to "monopolize" and exclude competition. To prove monopolization under § 2, a plaintiff must allege: "(1) the possession of monopoly power in the relevant market and (2) the willful . . . maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). The Supreme Court has defined monopoly power as "the power to

---

[2] Pursuant to Local Rule 7.1(d), the Court declines to consider Defendants' standing argument— unsupported by citations to relevant legal authority.

control prices or exclude competition*." United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956).

A plaintiff may establish monopoly power by evidence that a firm has profitably raised prices above the competitive level. *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001). However, possessing monopoly power does not by itself constitute monopolization. *Grinnell Corp.*, 384 U.S. at 570-71. Rather § 2 of the Sherman Act makes it unlawful to maintain monopoly power through exclusionary conduct. *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

The test for exclusionary conduct is set forth in *United States. v. Microsoft Corp.* First, a plaintiff must prove that a monopolist's conduct has had an "anticompetitive effect." *Microsoft*, 253 F.3d at 58. Second, if a plaintiff is successful in showing an anticompetitive effect, the alleged monopolist may proffer a non-pretextual "procompetitive justification" for its conduct. *Id*. at 59. Lastly, if the alleged monopolist's proffering of procompetitive justification is unrebutted, the plaintiff "must demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit." *Id*.

Here, the Complaint includes allegations of assigned seating arrangements to place tax-buyer defendants in the front and purposeful ignoring of non-defendant bidders who were not part of the illegal agreement. Plaintiffs further allege that winning bids that were not a result of "superior business acumen" but rather were a result of an illegal agreement to eliminate competition in bidding for tax liens. The alleged conduct is exclusionary in that it "had the effect of preventing other competitors from receiving the winning bid at the tax sale auctions" by "fixing, controlling, maintaining, limiting, and/or discontinuing the bidding of lower rates during the auction process…." Doc. 2, p. 29, ¶¶ 131-132. The alleged arrangement between Defendant Suarez and tax-purchaser defendants (including the Ballinger Defendants) prevented competitive

bids except on less lucrative properties, which were allowed in order to conceal the conspiracy. Based on these allegations, Plaintiffs have sufficiently pled exclusionary conduct and monopoly power to survive a motion to dismiss. Defendants' motion as to Count IV is denied.

**The Illinois Antitrust Act**

Defendants next move to dismiss Plaintiffs' state law antitrust claims, Counts V, VI and VII, on the same bases as their federal counterparts— Counts V and VI (antitrust conspiracy claims) mirror Count III and Count VII (monopolization claim) mirrors Count IV. "Illinois law provides that its courts should use the construction of federal antitrust law by federal courts to guide their construction of those state antitrust laws that are substantially similar to federal antitrust law." *State of Ill., ex rel. Burris v. Panhandle Eastern Pipe Line Co.*, 935 F.2d 1469, 1480 (7th Cir. 1991). As such, Defendants' motion as to Counts V, VI and VII is denied for the reasons set forth in the Court's analysis under the Sherman Act.

For the above-stated reasons, Defendants' Motion to Dismiss is **DENIED** in its entirety.

**IT IS SO ORDERED.**

**DATE: April 7, 2016**　　　　　　　　　　　　　　　　　　　**s/ *Staci M. Yandle***
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**STACI M. YANDLE**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**DISTRICT JUDGE**