IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN R. BLOYER, JR., et al.,

        Plaintiffs,

    vs.

ST. CLAIR COUNTY ILLINOIS, et al.,

        Defendants.

Case No. 14-cv-1119-SMY-RJD

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Barrett Rochman's Combined Motion to Dismiss (Doc. 76).  Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement pursuant to Rule 12(e) and to strike pursuant to Rule 12(f) and Local Rule 7.1(c).  Defendants Kenneth Rochman, Sabre Group, LLC and SI Securities, LLC join in the motion (Doc. 77).  Plaintiffs responded (Doc. 97).  For the following reasons, Defendants' motion is **DENIED**.

**BACKGROUND**

Plaintiffs' Complaint (Doc. 2) alleges that individuals who owned property located in St. Clair County and who redeemed that property at county tax auctions paid a "penalty" rate in excess of that which would have been required had they not been forced to participate in a "rigged tax sale."  Specifically, Defendants are alleged to have knowingly participated in a conspiracy with co-defendants St. Clair Co. and Suarez to diminish competitive bidding in order to ensure that lucrative properties were sold at the statutory maximum penalty percentage of 18% beginning at least as early as November 2006.

Plaintiffs further allege that Defendant Barrett Rochman, both individually and in conjunction with co-defendants Kenneth Rochman, Sabre Group and SI Securities (collectively

referred to as the "Rochman Defendants"), knowingly participated in the conspiracy as tax purchasers, with Sabre Group purchasing 180 properties at the 2006 tax sale and 205 properties at the 2007 tax sale, and SI Securities purchasing 115 properties at the 2006 tax sale and 141 properties at the 2007 tax sale - all at the conspiratorial maximum 18% interest rate.  Doc. 2, p. 5-6, ¶¶ 22-26.  Plaintiffs claim civil conspiracy against all Defendants (Count I), money had and received against all Defendants except Suarez (Count II), violations of the Sherman Act against all Defendants (Counts III and IV), violations of the Illinois Antitrust Act against all Defendants (Counts V-VII) and breach of fiduciary duty against Suarez (Count VIII).

Defendants move to dismiss Plaintiff's Complaint in its entirety as time-barred under the applicable statutes of limitations.  Defendants further move to dismiss Counts III and IV for failure to state a claim under the Sherman Act; Counts V, VI and VII for failure to state a claim under the Illinois Antitrust Act; Count I as barred under Section 9 of the Illinois Antitrust Act; and Count II for failure to state a claim for money had and received.  As an alternative to 12(b)(6) dismissal, Defendants move for a more definite statement as to the allegations regarding fraudulent concealment and also move to strike certain paragraphs as immaterial.

## DISCUSSION

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008).  This requirement is satisfied if the Complaint (1) describes the claim in sufficient detail to give the defendant fair

notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

### *Statute of Limitations*

As an initial matter, Defendants argue that all counts are barred by the applicable statute of limitations.  They assert that antitrust and conspiracy actions must commence within four years of the accrual of the claim and that a claim for money had and received must commence within five years of accrual.  Defendants further contend that Plaintiffs have failed to adequately allege a proper basis for tolling these statutes of limitations.

Plaintiffs acknowledge the statutes of limitations but argue that the discovery rule tolled the statute of limitations, citing *Clark v. City of Braidwood*, 318 F.3d 764 (7th Cir. 2003).   In *Clark*, the Seventh Circuit held that where a plaintiff relies on the discovery rule, a determination of timeliness is premature at the pleading stage.  *Clark*, 318 F.3d at 768

The discovery rule "postpones the beginning of the limitations period… to the date when [a plaintiff] discovers he has been injured."  *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006), quoting *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990). Therefore, the appropriate inquiry in this case is whether the Complaint pleads sufficient facts that, if proven, would raise a reasonable inference that the limitations period was tolled until 2014 when Plaintiffs discovered the injury.  Accepting all allegations of the Complaint as true, the Court finds they are sufficient to raise such an inference.

The Complaint alleges that Defendants and tax purchaser Co-Defendants directed "contributions" to the Democrat Party instead of to Suarez, that Suarez seated Defendants at the front of the auction room to facilitate the conspiracy and that other bids were allowed on less lucrative properties in order to cover up the conspiracy.  The Complaint further alleges that Defendants' conspiracy to rig tax auctions was inherently self-concealing so that Plaintiffs could not have discovered through reasonable diligence that they had been injured until 2014.  Accordingly, Defendants' motion to dismiss Plaintiffs' claims as time barred is denied.

### Civil Conspiracy

Defendants argue Count I should be dismissed because antitrust claims cannot be asserted as civil conspiracy claims under Illinois law.  Plaintiffs respond that independent, actionable tortious conduct is not required and that their Complaint alleges unlawful acts sufficient to plead a claim of civil conspiracy.

Section 9 of the Illinois Antitrust Act provides, "No contract, combination, conspiracy, or other act which violates this Act shall constitute or be deemed a conspiracy at common law." 740 ILCS § 10/9.  The bar committee comment clarifies that the purpose of the provision is "*to confine remedies* for what were formerly common law conspiracies to proceedings under the new Act, if violative of the new Act, and thus prevent another form of 'double jeopardy.'" *Id* (emphasis added).   The statute is clear that a plaintiff may not *recover* under both theories but is silent as to whether a plaintiff may *allege* both theories.

Defendants cite *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, No. 93-C-5578, 1994 WL 698486, at *4 (N.D. Ill. Dec. 12, 1994) in support of their argument that Section 9 also prohibits Plaintiff from *alleging* a civil conspiracy based upon a purported violation of the Illinois Antitrust Act.  The *Nichols* opinion did in fact hold that a civil conspiracy claim is

redundant and duplicative of the antitrust claims arising under the same set of facts and dismissed a conspiracy claim on that basis.  However, the statute does not bar a plaintiff from asserting claims under both theories.  In fact, the bar committee comment to Section 9 further states, "an injured party might still recover under the doctrine of a common law conspiracy where the conduct in question did not violate the new Act."  740 ILCS § 10/9.   Additionally, plaintiffs may plead alternative legal theories and, at trial, choose which theories of recovery to pursue.  Fed. R. Civ. P. 8(d).  Accordingly, Defendants' motion is denied as to Count I.

***"Money Had and Received"***

Defendants further argue that Count II should be dismissed because the Complaint fails to state a claim for money had and received.  Specifically, Defendants contend that the Illinois Property Tax Code expressly permits an 18% penalty rate and because no more than an 18% penalty was charged, Plaintiffs' allegations in Count II fail to state a claim.

In Illinois, a plaintiff bringing a claim for money had and received must allege that "(1) he was compelled to pay money to the defendant, (2) the defendant had no legal right to demand the money, and (3) payment was necessary in order to avoid an injury to his business, person or property." *Butitta v. First Mortgage Corp.*, 578 N.E.2d 116, 118-19 (Ill. App. 1991).  If allegations demonstrate that the receipt of money is "unjust given the unfair practice under which it was obtained," the claim is sufficient to survive a 12(b)(6) motion to dismiss.  *Fields v. Alcon Labs., Inc.*, No. 313CV00197DRHDGW, 2014 WL 1041191, at *4 (S.D. Ill. Mar. 18, 2014).  Here, Plaintiffs allege illegally rigged tax sales that unfairly ensured the highest penalties would be charged.  This is sufficient to state a claim for money had and received.  Accordingly, Defendants' motion is also denied as to Count II.

***The Sherman Act***

Defendants move to dismiss Counts III and IV for failure to state a claim under Sections 1 and 2 of the Sherman Act.  Defendants assert that Plaintiffs' claim under Section 1 for unlawful agreement or conspiracy in restraint of trade contains "fundamentally deficient allegations."  Defendants also assert a lack of antitrust injury and defined market under Section 1 and argue that the named plaintiffs lack standing.  As to Section 2, Defendants assert "fundamentally deficient allegations" of monopoly power and exclusionary conduct and  lack of a market definition.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  To plead a violation of § 1 of the Sherman Act, a plaintiff must plead: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury."  *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012) (quoting  *Denny's Marina, Inc. v. Renfro Prods., Inc.,* 8 F.3d 1217, 1220 (7th Cir.1993)).

Proof of an explicit agreement is not required to plead a Sherman Act antitrust conspiracy claim.  *United States v. General Motors Corp.*, 384 U.S. 127, 142-43 (2010).  Rather,  a Section 1 claim of conspiracy "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Here, Plaintiffs pled sufficient facts to survive a motion to dismiss.  The factual allegations include specific details about the agreement and how sales were structured to eliminate competition. This is sufficient to plausibly suggest an illegal conspiracy for purposes of Section 1 of the Sherman Act.

As to the second requirement—an unreasonable restraint of trade in a relevant market resulting from the conspiracy— Plaintiffs must allege a cognizable market on which Defendants' actions could have had anticompetitive effects. *Agnew,* 683 F.3d at 337-338. "Relevant market" has been defined by the United States Supreme Court as "commodities reasonably interchangeable by consumers for the same purposes." *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Unless it is inconceivable that Plaintiffs could prove a set of facts supporting the market definition alleged, Count III should not be dismissed. *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 977 (7th Cir. 1995) (reversing a 12(b)(6) dismissal as erroneous where district court "believed [plaintiff] had not alleged facts to support the complaint's market definition").

Plaintiffs do not provide an explicit definition of the alleged relevant market. Rather, the Complaint allegations provide an overview of the Illinois tax sale procedure, an outline of the situations in which a successful purchaser of property at a tax sale may double his initial investment or gain title to property at less than market value and citations to the Illinois Property Tax Code regarding the public sale process. Further, the Complaint cites Illinois case law to support the allegation that the Illinois Property Tax Code "envisions that the public sale process will foster competition in bidding, reducing the [penalty rate] percentage, thereby enabling property owners to redeem their property for the lowest amount." Doc. 2, p. 12, ¶60. The Complaint further alleges that the auctioneer is "obligated to engage in a 'reverse auction' process whereby he solicits and accepts bids to obtain this least penalty percentage." *Id*.

The Court finds that these allegations sufficiently identify the relevant market. Competition is clearly envisioned by the Property Tax Code. Further, Plaintiffs' allegations reasonably set forth tax lien certificates as products that fall within the definition of commodity.

7

The Complaint sufficiently defines the relevant market in terms of its product (tax lien certificates) and its location (St. Clair County).

To meet the third requirement,  Plaintiffs must allege not only an injury to themselves, but an injury to the market as well.  See, *Agnew,* 683 F.3d at 334-35.  "Such injury must involve 'loss [that] comes from acts that reduce output or raise prices to consumers.'"  *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 399 (7th Cir. 2006) (quoting *Chi. Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n,* 961 F.2d 667, 670 (7th Cir.1992)).

Contrary to Defendants' contentions, it is not necessary to show that one plaintiff was injured by the sale of another property owner's taxes.  What needs to be shown is a loss that comes from acts that raise prices to consumers.  Plaintiffs' Complaint alleges an inflated penalty rate caused by Defendants' anticompetitive activity— a rate that Plaintiffs and hundreds of other property owners would have been forced to pay in order to redeem their properties.  Doc. 2, p. 18, ¶ 87.  These allegations are sufficient to establish injury.  Accordingly, Defendants' motion to dismiss Count III is denied.[1]

Section 2 of the Sherman Act, 15 U.S.C. § 2, makes it unlawful for a person or company to "monopolize" and exclude competition.  To prove monopolization under § 2, a plaintiff must allege: "(1) the possession of monopoly power in the relevant market and (2) the willful . . . maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  The Supreme Court has defined monopoly power as "the power to control prices or exclude competition.*" United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956).

---

[1] Pursuant to Local Rule 7.1(d), the Court declines to consider Defendants' standing argument— unsupported by citations to relevant legal authority.

A plaintiff may establish monopoly power by evidence that a firm has profitably raised prices above the competitive level.  *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001).  However, possessing monopoly power does not by itself constitute monopolization. *Grinnell Corp.*, 384 U.S. at 570-71.  Rather § 2 of the Sherman Act makes it unlawful to maintain monopoly power through exclusionary conduct.  *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko*, *LLP*, 540 U.S. 398, 407 (2004).

The test for exclusionary conduct is set forth in *United States. v. Microsoft Corp.* First, a plaintiff must prove that a monopolist's conduct has had an "anticompetitive effect." *Microsoft*, 253 F.3d at 58.  Second, if a plaintiff is successful in showing an anticompetitive effect, the alleged monopolist may proffer a non-pretextual "procompetitive justification" for its conduct. *Id.* at 59. Lastly, if the alleged monopolist's proffering of procompetitive justification is unrebutted, the plaintiff "must demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit." *Id.*

Here, the Complaint includes allegations of assigned seating arrangements to place tax-buyer defendants in the front and purposeful ignoring of non-defendant bidders who were not part of the illegal agreement.  Plaintiffs further allege that winning bids were not a result of "superior business acumen" but rather were a result of an illegal agreement to eliminate competition in bidding for tax liens.  The alleged conduct is exclusionary in that it "had the effect of preventing other competitors from receiving the winning bid at the tax sale auctions" by "fixing, controlling, maintaining, limiting, and/or discontinuing the bidding of lower rates during the auction process…."  Doc. 2, p. 29, ¶¶ 131-132.  The alleged arrangement between Defendant Suarez and tax-purchaser defendants prevented competitive bids except on less lucrative properties, which were allowed in order to conceal the conspiracy.   Based on these allegations,

Plaintiffs have sufficiently pled exclusionary conduct and monopoly power to survive a motion to dismiss.  Thus, Defendants' motion as to Count IV is denied.

**The Illinois Antitrust Act**

Defendants next move to dismiss Plaintiffs' state law antitrust claims, Counts V, VI and VII, on the same bases as their federal counterparts— Counts V and VI (antitrust conspiracy claims) mirror Count III and Count VII (monopolization claim) mirrors Count IV.  "Illinois law provides that its courts should use the construction of federal antitrust law by federal courts to guide their construction of those state antitrust laws that are substantially similar to federal antitrust law." *State of Ill., ex rel. Burris v. Panhandle Eastern  Pipe Line Co*., 935 F.2d 1469, 1480 (7th Cir. 1991).   As such, Defendants' motion as to Counts V, VI and VII is denied for the same reasons set forth in the Court's analysis under the Sherman Act.

**Rule 12(e) and 12(f)**

The Court having found that the Complaint contains sufficient facts to survive 12(b)(6) dismissal, Defendants' alternative motion for a more definite statement is likewise denied.

Finally, Defendants move to strike paragraphs 93 through 102 of the Complaint and Exhibits 1 through 4.  Defendants argue generally that the allegations presented in these portions of Plaintiffs' pleading are immaterial and "likely rise[] to the level of scandalous as an attempt to confuse and improperly impugn the St. Clair County property tax sales with that of Madison County."  Doc. 36, p. 5.

Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are generally disfavored, however, and are often viewed as "time wasters." *Heller Financial Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); Charles A. Wright and Arthur R.

Miller, 5C Federal Practice and Procedure § 1382 (3d ed.).  Moreover, "[t]here appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Id. (footnotes omitted).

The Court finds that the challenged paragraphs and exhibits are neither immaterial nor scandalous and that Defendants will not be significantly prejudiced by them.  For these reasons, Defendant's motion to strike is denied.

For the above-stated reasons, Defendants' Motion to Dismiss is **DENIED** in its entirety.

**IT IS SO ORDERED.**

**DATE: November 17, 2016**                              _s/  **Staci M. Yandle**_
                                                                              **STACI M. YANDLE**
                                                                              **DISTRICT JUDGE**